J-A05045-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEPHEN BRADSHAW | : | |
| | : | |
| Appellant | : | No. 813 MDA 2021 |

Appeal from the Judgment of Sentence Entered December 23, 2019
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000004-2019

BEFORE: OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:         **FILED: MARCH 16, 2022**

Appellant Stephen Bradshaw appeals from the judgment of sentence entered in the Court of Common Pleas of Lycoming County on December 23, 2019, following his guilty plea.[1] We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1]   The trial court docket indicates that Appellant was sentenced on December 23, 2019. Appellant filed a timely post-sentence motion on January 2, 2020, which was denied on April 7, 2020. On October 16, 2020, Appellant filed a timely *pro se* PCRA petition. Counsel was appointed, and an amended petition was filed on March 29, 2021. On June 2, 2021, the trial court granted Appellant's PCRA petition and reinstated Appellant's direct appeal rights *nunc pro tunc*. Counsel for Appellant filed a notice of appeal on June 23, 2021, in which counsel erroneously had stated that the appeal was from the "Order entered on May 25, 2021," granting *nunc pro tunc* relief, rather than from the December 23, 2021, judgment of sentence.

By order of July 13, 2021, Appellant was directed to show cause as to why the appeal should not be quashed as Appellant is not an aggrieved party. Counsel for Appellant filed a motion to amend the notice of appeal in the trial court on July 14, 2021. The trial court granted the motion on July 20, 2021, and the amended notice of appeal was forwarded to this Court. The amended

*(Footnote Continued Next Page)*

J-A05045-22

The trial court set forth the relevant facts and procedural history herein as follows:

By way of background, Appellant was charged with twenty counts related to the possession and delivery of controlled substances and the criminal use of communication facilities.[1] On October 4, 2019, Appellant entered an open guilty plea to four counts of delivery of heroin, two counts of delivery of cocaine, and four counts of criminal use of a communication facility, arising out of incidents that occurred on November 14, 2018; November 20, 2018; December 3, 2018; and December 10, 2018.[2] Appellant admitted that on November 14, 2018 and November 20, 2018 he delivered heroin to a third party and utilized a cellular telephone to arrange the transactions. Appellant also admitted that on December 3, 2018 and December 10, 2018, he delivered heroin and cocaine to a third person utilizing a cellular telephone to arrange the transactions.

On December 23, 2019, the court sentenced Appellant to undergo incarceration in a state correctional institution for an aggregate term of eight (8) to twenty (20) years, which consisted of two (2) to four (4) years for each delivery of heroin to be served consecutively to each other.[3]

Appellant filed a motion for reconsideration of sentence. He alleged that his sentence was excessive because: the Commonwealth never made an offer; the court failed to provide sufficient weight to Appellant's good behavior while incarcerated; despite Appellant's minimization of his mental health and substance use disorders, Appellant actually suffers from such; the court did not accord sufficient weight to the fact that Appellant was never convicted of any crimes of violence or of a sexual nature; and Appellant pled guilty and did not proceed to trial. In

notice of appeal states that the appeal is "from the Judgment of Sentence on December 23, 2019, whereby his direct appeal rights were reinstated *nunc pro tunc* by order entered on May 25, 2021 [sic]." **See** Pa.R.A.P. 1701(b)(1*)* (The trial court may take such action to preserve the *status quo* including "correct formal errors in papers relating to the matter"). Counsel filed a copy of the amended notice of appeal with this Court on July 22, 2021, and a response to the show-cause order on July 23, 2021, documenting the steps taken in the trial court.

an Opinion and Order entered on April 7, 2020, the court denied Appellant's motion for reconsideration of sentence.

Although Appellant wished to appeal his sentence, no appeal was filed within thirty (30) days due to a breakdown in communication between Appellant and his plea counsel due at least in part to the pandemic. Through PCRA proceedings, however, the court reinstated Appellant's direct appeal rights nunc pro tunc in an order dated May 25, 2021 and docketed on June 2, 2021.

_____

[1] 35 P.S.A. § 780-113(a)(16),(30); 18 Pa. C.S.A. § 7512.
[2] In a prior Opinion and Order, the court incorrectly stated that the dates were November 3, 10, 14 and 20.
[3] On each of the remaining counts of delivery of cocaine and criminal use of a communication facility, the court imposed a concurrent sentence of one (1) to three (3) years' incarceration.

Trial Court's Opinion in Support of Order in Compliance with Rule 1925(a) of the Rules of Appellate Procedure, filed September 21, 2021, at 1-2.

Following the reinstatement of his direct appeal rights, Appellant filed a timely notice of appeal on June 23, 2021. On June 29, 2021, the trial court entered its Order directing Appellant to file a concise statement of errors complained of on appeal, and Appellant filed his Concise Statement of Matters Complained of on Appeal on July 20, 2021. The trial court filed its Opinion pursuant to Pa.R.A.P. 1925(a) on September 21, 2021.

In his brief, Appellant presents the following Statement of Questions Involved:

1. Whether the consecutive application of the sentences renders the total sentence excessive?

2. Whether court erred in considering the national impact of drug addiction and overdose when imposing sentence, and speculating that individuals may have died as a result of defendant's conduct?

- 3 -

> 3. Whether [the] court erred in concluding that [Appellant] needs to be warehoused and that he is incapable of rehabilitation, essentially disregarding the mitigating factors in the case?

Brief for Appellant at 4.[2]

It is well-settled that a guilty plea amounts to a waiver of all non-jurisdictional defects and defenses; therefore, a defendant generally may appeal only matters concerning the jurisdiction of the court, the validity of the guilty plea, and the legality of the sentence. **Commonwealth v. Morrison**, 173 A.3d 286, 290 (Pa.Super. 2017). However, when a defendant pleads guilty without an agreement as to the sentence, he or she may challenge the discretionary aspects of the sentence imposed. *Commonwealth v. Brown*, 240 A.3d 970, 972 (Pa.Super. 2020).

The aforementioned issues implicate the discretionary aspects of Appellant's sentence. *See Commonwealth v. Moury*, 992 A.2d 162, 169 (Pa.Super. 2010) (stating challenge to imposition of consecutive sentences for multiple counts of same crime and failure to consider mitigating factors implicate the discretionary aspects of one's sentence). Notwithstanding, such a challenge is not appealable as of right. *See* 42 Pa.C.S.A. § 9781(b). Instead,

> an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with

---

[2] In a letter filed with this Court's Prothonotary on November 29, 2021, the Commonwealth indicated that it would not be filing an appellate brief.

Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth "a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence[;]" and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code[.]

***Commonwealth v. Akhmedov***, 216 A.3d 307, 328 (Pa.Super. 2019) (citation omitted). Following satisfaction of all four elements, this Court then reviews the underlying discretionary aspects of sentencing issues pursuant to an abuse of discretion standard. ***See id***., at 328-29.

Herein, Appellant has satisfied the first three prongs by filing a timely notice of appeal *nunc pro tunc*, filing a post-sentence motion seeking reconsideration of his sentence, and including within his brief a statement pursuant to Rule 2119(f). ***See*** Brief for Appellant at 10-11. As such, we review Appellant's Rule 2119(f) statement to ascertain whether he has presented a substantial question that evinces an incongruency between the sentence he received and the Sentencing Code as written.

Appellant argues in his Rule 2119(f) statement that his appeal presents a substantial question because the consecutive nature of his sentences resulted in an unreasonable, excessive minimum and maximum sentence for nonviolent offenses. Appellant further contends the trial court considered an impermissible factor, specifically expressing wonder about the number of drug overdoses in 2017 nationwide, and failed to properly consider significant mitigating factors in Appellant's personal background when imposing its sentence. Brief for Appellant at 10-11.

While "[a]n allegation that the sentencing court failed to consider mitigating factors generally does not necessarily raise a substantial question," *see Moury*, *supra* at 171 (citation omitted), "[a] claim that a sentencing court ... sentenced a defendant without taking into account his ... character and background ... raises a substantial question that the sentence is inappropriate under the Sentencing Code." *Commonwealth v. Luketic*, 162 A.3d 1149, 1162 (Pa.Super. 2017); *see also Commonwealth v. Gonzalez*, 109 A.3d 711, 731 n.38 (Pa.Super. 2015) ("[A] substantial question exists when the defendant asserts both a claim of excessiveness and the trial court's failure to take mitigating circumstances into account.").

In light of the foregoing, we conclude that Appellant's challenge to the imposition of his consecutive sentences as unduly excessive, together with his claim that the court failed to consider his rehabilitative needs and mitigating factors and considered inappropriate factors upon fashioning its sentence, raises a substantial question. Thus, we proceed to address the merits of his sentencing claims. *Commonwealth v. Swope*, 123 A.3d 333, 340 (Pa.Super. 2015). Our standard of review of a sentencing claim is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa.Super. 2006).

Notably, the trial court had the benefit of a pre-sentence investigation (PSI) report prior to sentencing. "[W]here the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa.Super. 2009) (citation omitted). In addition, we can assume the court was aware of the relevant information regarding Appellant's character and weighed those considerations along with mitigating statutory factors. *Commonwealth v. Hill*, 210 A.3d 1104, 1117 (Pa.Super. 2019) (internal quotation marks and citation omitted).

Moreover, Appellant's sentence was within the standard range of the Sentencing Guidelines. Such sentences are considered appropriate under the Sentencing Code. *See Moury*, *supra* at 171. If both conditions exist concurrently, a PSI report and standard range sentence cannot be considered excessive or unreasonable absent some indicia clearly evidencing the contrary. *See id*.

When considering the claims Appellant raises herein, the trial court stated the following:

> Appellant first contends that the sentence of the court was excessive due to the consecutive application of the sentences. The court cannot agree.
> A sentencing judge has discretion to impose consecutive sentences. 42 Pa. C.S.A. §9721(a)(in determining the sentence to be imposed the court shall consider and select one or more of the listed sentencing alternatives, and may impose them

- 7 -

consecutively or concurrently.); *Commonwealth v. Brown*, 249 A.3d 1206, 1212 (Pa. Super. 2021)( the court has the discretion to impose its sentences concurrently or consecutively); *Commonwealth v. Zirkle*, 107 A.3d 127, 133 (Pa. Super. 2014)(imposition of consecutive rather than concurrent sentences lies within the discretion of the sentencing court). The appellate court will not disturb consecutive sentences unless the aggregate sentence is "grossly disparate" to the defendant's conduct, or viscerally appears as patently unreasonable. *Brown*, *supra*. "[W]here a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Commonwealth v. Griffin*, 65 A.3d 932, 938 (Pa.Super. 2013). Furthermore, a defendant is not entitled to a volume discount for his crimes by having all sentences run concurrently. *Zirkle*, 107 A.3d at 134; *Commonwealth v. Haag*, 665 A.2d 1212, 1214 (Pa.Super. 1995).

The court reviewed a Pre-Sentence Investigation (PSI) report, a risk/needs assessment, a supervision report from prior supervision, a social assessment prepared at the request of defense counsel, and a report from the Lycoming County Prison. The court also heard arguments from counsel and a statement from Appellant.

Appellant's prior criminal record consisted of five separate prior convictions for the manufacture, delivery or possession with intent to deliver (PWID) a controlled substance, ungraded felonies; a conviction for identity theft, a felony of the third degree; a conviction for possession of a controlled substance, an ungraded misdemeanor; and a conviction for possession of a small amount of marijuana, an ungraded misdemeanor. Appellant was sentenced to probation, county prison and state sentences for his prior convictions. Sentencing Transcript, 12/23/2019, at 3. Nothing deterred Appellant's criminal activities or changed his ways. He just served his sentences and then continued to traffic controlled substances. Most, if not all, of Appellant's crime free periods were explainable by his incarceration. **Id**. at 9. Moreover, Appellant admitted that he did not need the money; he simply wanted to "live comfortably." **Id**. at 4.

Although Appellant does not consider himself an addict, he admitted that he has used drugs for 28 years and he has no desire to stop. Sentencing Transcript, at 4, 6.

Appellant's Prior Record Score (PRS) was five but if the guidelines did not cap the point-score at five,[4] his true score would have been 12. The Offense Gravity Score was six for the deliveries of heroin; it was five for the remaining offenses. Therefore, the

standard minimum sentencing guideline ranges were 21 to 27 months for each delivery of heroin, and 12 to 18 months for each of the remaining offenses.

The court imposed consecutive sentences of 2 to 5 years' incarceration for each delivery of heroin, but imposed concurrent sentences of 1 to 3 years' incarceration for delivery of cocaine, PWID cocaine, and the four counts of criminal use of a communications facility. All of these sentences were in the middle to bottom end of the standard guideline
ranges.

The court did not impose consecutive sentences due to partiality, bias or ill will. Rather, given Appellant's prior criminal history and opportunities for rehabilitation, it was now time to protect the public. Enough was enough. Under the facts and circumstances of this case, a lengthy prison sentence was appropriate.

As the court noted in its sentencing order:

[Appellant] wrote a relatively heartfelt and very articulate letter to the [c]ourt setting forth his regret for what he did, his insight into the nature of his behaviors, and how he has learned from his mistakes. The [c]ourt can only question, however, the ability of [Appellant] to make changes. [Appellant] has spent a significant amount of time in jail prior to this, and the [c]ourt is left wanting as to why [Appellant] did not reach such conclusions about his behaviors and his future when he spent years in prison previously. He had available programming, and had certainly enough time to think about where he did not want to be.

[Appellant] does present a significant danger to the public. For over half of his life he has been involved in distributing controlled substances. Despite escalating sanctions[,] [Appellant] has not changed his behaviors. [Appellant] admitted that he became addicted to the lifestyle, and did not sell controlled substances for any other reasons but to be more comfortable with his financial situation. He indicated he did not need the money, but wanted it.

The cost to the community as a result of [Appellant's] conduct cannot be accurately measured. To say that the community, families, mothers, children, siblings, and even innocent individuals is significant

- 9 -

would be an understatement. In 2017 alone[,] over 70,000 people died of drug overdoses in the United States. The [c]ourt can only wonder how many individuals, if any, died as a result of [Appellant's] conduct. The [c]ourt can only wonder, but does not really have to guess how many families and individuals were destroyed as a result of [Appellant's] conduct.

The impact of the offense on the community is significant and cannot really be put in words. Protecting the public under these circumstances is a very high need. [Appellant's] rehabilitation is questionable. While [Appellant] speaks very well in connection with his intentions, his conduct over the past twenty (20) years belies such intentions.

This is a sad day. While many [c]ourts and [j]udges hesitate in being entirely candid, this [c]ourt tries to be as candid as possible. [Appellant] needs to be warehoused. Society needs to be protected. [Appellant] appears to this [c]ourt to be institutionalized and incapable of changing his behaviors despite his insight. In weighing all relevant factors, the [c]ourt has to place the most emphasis on protecting the public.

Yes, drug dealing will be prevalent and continue to exist, and yes others may take [Appellant's] place, but this does not mean that [Appellant] should not be accountable, or that the public should not be protected from [Appellant's] conduct. In the past nineteen (19) years [Appellant] has had eight (8) drug[-]related convictions, and five (5) delivery or possession with intent to deliver convictions. The [c]ourt takes no pleasure in warehousing [Appellant]. The [c]ourt takes no pleasure in impacting his family's life. The [c]ourt takes no pleasure in seeing another young man become a statistic versus an exception. Yet, as [Appellant] properly noted, these were his choices. He did have choices available to him[,] and he chose this route. As defense counsel aptly notes, and unfortunately notes, this is the price of doing business and [Appellant] was well aware of such.[3]

---

[3] **See** Sentencing Order, filed December 30, 2019, at 2-3 (unnumbered).

For the foregoing reasons, the court does not believe that the imposition of some consecutive sentences in this case resulted in an excessive sentence.

Appellant next contends that the court erred in considering the national impact of drug addiction and overdose when imposing sentence, and speculating that individuals may have died due to Appellant's conduct. Again, the court cannot agree.

The court's statements in this regard were in response to the minimization of Appellant's drug crimes. The writer of the social assessment indicated that Appellant did not want to further the problem of addiction in our society by continuing to sell drugs because he knows the damage that they cause, but a lengthy state sentence would only warehouse Appellant and perpetuate the vicious cycle prominent in his life. Furthermore, the writer indicated whether Appellant continues to sell drugs or not, the replacement effect will occur and someone else will take his place. Sentencing Transcript, at 5. Additionally, during the sentencing hearing and in the motion for reconsideration of sentence, defense counsel argued that a lengthy state sentence was not appropriate because Appellant did not have a history of violent crimes or sexual offenses; he just had a history of repeat drug offenses. Sentencing Transcript, at 13-14; Motion for Reconsideration, ¶6(d).

While delivery of heroin is not a "crime of violence" as defined in 42 Pa. C.S.A. §9714(g), it is a crime which negatively affects society greatly and carries a risk of death. At the reconsideration hearing, both defense counsel and the district attorney acknowledged that fact. Defense counsel stated, "Yes this is a problem. This is a horrible problem. Yes many people do die from opiate use." Reconsideration Transcript, 3/16/2020, at 6. The district attorney stated:

> This is an individual that has prior drug delivery convictions, he had a prior protracted state sentence, none of this was a deterrence leading up to the most recent set of charges for which he's subsequently been sentenced. The only thing devoid in this young man's record with respect to drug crimes is a drug delivery resulting in death, and that's fortunate for both him and society.

*Id*. at 8. Moreover, appellate case law recognizes the dangers inherent with the delivery of opiods [sic]. As the Superior Court

- 11 -

noted in *Minn. Fire and Cas. Co. v. Greenfield*, 805 A.2d 622, (Pa.Super. 2002), *aff'd* 855 A.2d 854 (Pa. 2004):

> [I]t is certain that frequently harm will occur to the buyer if one sells heroin. Not only is it criminalized because of the great risk of harm, but in this day and age, everyone realizes the danger of heroin use.

805 A.2d at 624; see also *Commonwealth v. Burton*, 234 A.3d 824, 833 (Pa.Super. 2020); *Commonwealth v. Kakhankham*, 132 A.3d 986, 995-96 (Pa. Super. 2015). By repeatedly selling heroin, Appellant was playing Russian roulette with the lives of his purchasers. See *Minn. Fire and Cas. Co. v. Greenfield*, 855 A.2d 854, 870-71 (Pa. 2004)(Castille, J., concurring)(the use of illegally-purchased heroin is a modern form of Russian roulette). No one died from his current sales because Appellant sold to undercover officers who never were going to use the substances, but that does not diminish the seriousness of Appellant's offenses or the pervasive nature of Appellant's drug dealing since approximately 1999.

Appellant asserts that the court erred in determining that Appellant needs to be warehoused and he is incapable of rehabilitation. He also asserts that the court erred in discounting the effect of Appellant's mental health problems. The court found that Appellant needs to be warehoused and his rehabilitative needs should be accorded little weight compared to the protection of the public because this was the sixth time that Appellant had been convicted of delivery of controlled substances, and he engaged in four separate deliveries of heroin. Although Appellant wrote a heartfelt letter setting forth his regret for what he did, his insight into the nature of his behaviors, and how he has learned from his mistakes, his words rang hollow in light of his behaviors and failure to change during his previous sentences of probation, county incarceration and state incarceration. Actions speak louder than words. Through his actions, Appellant has shown that he cannot or will not stop dealing drugs.

Although Appellant has used controlled substances for 28 years, he has no desire to stop and does not consider himself an addict. Appellant acknowledged that he is like a moth drawn to a flame. What he fails to recognize is that as long as he continues to use controlled substances and have contact with the individuals providing those substances to him, he likely will continue to be drawn to his lifestyle of dealing drugs.

- 12 -

With respect to his mental health problems, the defense provided little or no information regarding those problems. There was a reference in the social assessment that as long as Appellant can remember he has been on disability, he had vision and hearing issues, and a mental health diagnosis but he doesn't know what that diagnosis was. Sentencing Transcript, 12/23/2019, at 4. Appellant also made statements at the reconsideration hearing about his rough home life growing up with drug-addicted relatives in Philadelphia and how due to various difficulties (including abuse), at one point he wanted to take himself off this planet. Reconsideration Transcript, 3/16/2020, at 10. From these statements, one could infer that at least at one point in his life Appellant had issues with depression and thoughts of suicide. However, without knowing Appellant's mental health diagnoses or the treatment he needs, if any, the court could not find that Appellant's mental health problems outweighed the need to protect the public in this case.

_____
[4]204 Pa. Code §303.4(a)(3)("Offenders who do not fall into the REVOC or RFEL categories shall be classified in a Point-Score Category. The Prior Record Score shall be the sum of the points accrued based on previous convictions and adjudications, up to a maximum of five points.").

Trial Court Opinion in Support of Order in Compliance with Rule 1925(a) of the Rules of Appellate Procedure, filed 9/21/21, at 4-10.

Following our review, we find the record unambiguously reflects the trial court's knowledge and consideration at sentencing of the information it highlights in its Rule 1925(a) Opinion. Appellant's arguments to the contrary, the consecutive nature of Appellant's sentence did not result in an unreasonable application of the Sentencing Guidelines.

The trial court had the benefit of a PSI and numerous other assessments when fashioning its sentence. While it opined as to the number of drug related deaths to which Appellant may have contributed, this musing was merely a

small part of the trial court's detailed explanation for the sentence it imposed and was in response to the statements made in the social assessment which Appellant's counsel had provided.

In addition, the trial court considered Appellant's PSI during sentencing, and noted, on the record, Appellant's extensive history of drug-related convictions. **See** N.T. Sentencing, 2/23/19, at 2-7. Clearly, the court was cognizant of Appellant's troubled background as is evident by both its statements on the record at the sentencing hearing and its possession of a PSI. However, it properly determined that Appellant's admitted refusal to stop using and selling drugs outweighed any mitigating factors for purposes of sentencing.

Mindful that sentencing is a matter vested in the sound discretion of the trial court, and finding no showing of manifest abuse, we conclude the trial court did not abuse its discretion in rendering Appellant's sentence. **See Moury**, 992 A.2d at 169–70. As such, we find the trial court was within its discretion to impose the consecutive sentence of eight (8) to twenty (20) years' incarceration.

Judgment of Sentence Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>03/16/2022</u>