J-A03029-15

2015 PA Super 225

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SOMWANG LAOS KAKHANKHAM | |
| Appellant | No. 712 MDA 2014 |

Appeal from the Judgment of Sentence entered April 1, 2014
In the Court of Common Pleas of Cumberland County
Criminal Division at No: CP-21-CR-0003607-2012

BEFORE:  MUNDY, STABILE, and FITZGERALD,* JJ.

OPINION BY STABILE, J.:                    **FILED OCTOBER 28, 2015**

Appellant, Somwang Laos Kakhankham, appeals from the judgment of

sentence entered April 1, 2014 in the Court of Common Pleas of Cumberland

County.  For the reasons stated below, we affirm.

The trial court summarized the relevant factual background as follows:

On February 6, 2012, [victim] was found deceased in his home at 328 West Penn Street in the borough of Carlisle.  A search of [victim]'s home resulted in the discovery of a syringe, two (2) empty bags, stamped with the name Blackout, in addition to six (6) bags of heroin, also stamped with the name Blackout.  A witness[, JL,] told police officers that [Appellant] entered [victim]'s home at approximately 1 A.M. the day [victim] was found.  [Appellant] told a second witness that [Appellant] had

---

* Former Justice specially assigned to the Superior Court.

provided the heroin to [victim].[1]  This same witness, identified as DS, also purchased $100 worth of heroin from [Appellant,] which was stamped with the name Blackout.  The next day, DS met with police officers to conduct a controlled purchase of heroin from [Appellant], during which DS purchased two (2) bags of Blackout-stamped heroin using $40 of official funds.  On February 8, 2012, a probation check of [Appellant]'s residence found two (2) bags of heroin stamped with the name Blackout as well as $656 in cash which contained the $40 in official funds from the prior day's controlled purchase.  On February 16, 2012, a third witness told police [that he, the witness] had purchased heroin with the stamp Blackout from [Appellant].  [Another witness, witness number four,] additionally told the police that [Appellant] told them he provided the heroin to [victim].[2,3] Finally, a Cumberland County Coroner's report dated October 4, 2012 stated that the level of morphine in [victim]'s bloodstream was 295 nanograms per millimeter.  Heroin metabolizes into morphine upon being absorbed by the body.  The therapeutic level for morphine is ten (10) nanograms per millimeter.  The level of metabolized heroin was the cause of [victim]'s death.

Trial Court Opinion, 8/4/14, 1-3 (citation to stipulated record omitted).

As a result, Appellant was charged with drug delivery resulting in death, 18 Pa.C.S.A. § 2506, and possession of a controlled substance with intent to deliver, 35 P.S. § 780–113(a)(30).  Following a preliminary hearing, Appellant filed a petition for writ of habeas corpus alleging that the

---

[1] "During the purchase, [Appellant] told the witness, DS, that he had fronted the victim heroin the day before his death."  N.T. Stipulated Record, 1/14/14, at 6.

[2] Appellant "told this witness that [Appellant] had supplied the victim with the heroin that resulted in victim's death."  N.T. Stipulated Record, 1/14/14, at 7.

[3] Another witness, witness number five, stated that Appellant stated to the witness that "he had fronted the victim a bundle of heroin stamped Blackout."  N.T. Stipulated Record, 1/14/14, at 8.

Commonwealth "failed to present sufficient evidence to establish a prima facie case of the elements of [18 Pa.C.S.A. § 2506,]" requiring dismissal of the charges. Petition for Writ of Habeas Corpus, 8/28/14, at 1. After a hearing, the court denied the petition. *See* Order of Court, 12/18/13.

Following a trial,[4] Appellant was found guilty of drug delivery resulting in death. 18 Pa.C.S.A. § 2506. The trial court sentenced Appellant, *inter alia*, to 78 months to 156 months' imprisonment. This appeal followed.

Appellant raises the following issues for our review:

1. Did the [h]abeas and [t]rial courts err in finding Pennsylvania's [d]rug [d]elivery [r]esulting in [d]eath [s]tatute (18 Pa.C.S.A. § 2506) not unconstitutionally vague when (1) the statute fails to clearly indicate the requisite *mens rea* for conviction, and (2) the statute fails to clearly indicate the requisite level of causation for the result-of-conduct element, and the vagueness of the statute will result in arbitrary and discriminatory enforcement of the law?

2. Did the [h]abeas and [t]rial courts err in finding the Commonwealth established a *prima facie* case when the Commonwealth did not present any evidence related to [Appellant]'s culpability regarding the result-of-conduct element of Pennsylvania's [d]rug [d]elivery [r]esulting in [d]eath [s]tatute (18 Pa.C.S.A. § 2506)?

Appellant's Brief at 4.

In his brief, Appellant essentially asks us to "measure the challenged statutory proscription, not against the specific conduct involved in this case,

---

[4] Appellant's trial consisted of a stipulated record whereby the district attorney read into the record the facts of the case. *See* Trial Court Opinion, 8/4/14, at 1.

but against hypothetical conduct that the statutory language could arguably embrace." ***Commonwealth v. Heinbaugh***, 354 A.2d 244, 245 (Pa. 1976). However, "[i]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." ***Id.*** (quotation omitted). "Therefore, we will address the alleged vagueness of § [2506] as it applies to this case." ***Commonwealth v. Mayfield***, 832 A.2d 418, 422 (Pa. 2003).

> We review Appellant's claims under the following standard:
>
> Analysis of the constitutionality of a statute, and whether the Commonwealth met its *prima facie* case under Section 2506, are both questions of law, therefore, our standard of review is de novo. ***Commonwealth v. MacPherson***, 561 Pa. 571, 752 A.2d 384, 388 (2000); Pa.R.A.P. 2111(a)(2). Our scope of review, to the extent necessary to resolve the legal questions before us, is plenary, i.e., we may consider the entire record before us. ***Buffalo Township v. Jones***, 571 Pa. 637, 813 A.2d 659, 664 n.4 (2002); Pa.R.A.P. 2111(a)(2).

***Commonwealth v. Ludwig***, 874 A.2d 623, 628 n.5 (Pa. 2005).

In reviewing challenges to the constitutionality of a statute, and in particular whether a statute is unconstitutionally vague,

> [we presume the statute] to be constitutional and will only be invalidated as unconstitutional if it "clearly, palpably, and plainly violates constitutional rights." [***MacPherson***, 752 A.2d at 388] (citation omitted). Related thereto, courts have the duty to avoid constitutional difficulties, if possible, by construing statutes in a constitutional manner. ***Harrington v. Dept. of Transportation***, ***Bureau of Driver Licensing***, 563 Pa. 565, 763 A.2d 386, 393 (2000); *see also* 1 Pa.C.S. § 1922(3) (setting forth the presumption that the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth). Consequently, the party challenging a

statute's constitutionality bears a heavy burden of persuasion. *MacPherson*, 752 A.2d at 388.

Turning to the constitutional challenge raised in this appeal, as a general proposition, statutory limitations on our individual freedoms are reviewed by courts for substantive authority and content, in addition to definiteness or adequacy of expression. *See*, *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). A statute may be deemed to be unconstitutionally vague if it fails in its definiteness or adequacy of statutory expression. This void-for-vagueness doctrine, as it is known, implicates due process notions that a statute must provide reasonable standards by which a person may gauge his future conduct, i.e., notice and warning. *Smith v. Goguen*, 415 U.S. 566, 572, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); [*Heinbaugh*, 354 A.2d at 246].

Specifically with respect to a penal statute, our Court and the United States Supreme Court have found that to withstand constitutional scrutiny based upon a challenge of vagueness a statute must satisfy two requirements. A criminal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender*, 461 U.S. at 358, 103 S.Ct. 1855; [*Mayfield*, 832 A.2d at 422]; *Commonwealth v. Mikulan*, 504 Pa. 244, 470 A.2d 1339, 1342 (1983); *see also Heinbaugh*, 354 A.2d at 246; *see generally* Goldsmith, THE VOID–FOR–VAGUENESS DOCTRINE IN THE SUPREME COURT, REVISITED, 30 Am. J. Crim. L. 279 (2003).

In considering these requirements, both High Courts have looked to certain factors to discern whether a certain statute is impermissibly vague. For the most part, the Courts have looked at the statutory language itself, and have interpreted that language, to resolve the question of vagueness. *See Kolender*, 461 U.S. at 358, 103 S.Ct. 1855; *Mayfield*, 832 A.2d at 422; *Commonwealth v. Cotto*, 562 Pa. 32, 753 A.2d 217, 220 (2000). In doing so, however, our Court has cautioned that a statute "is not to be tested against paradigms of legislative draftsmanship," *Heinbaugh*, 354 A.2d at 246, and thus, will not be declared unconstitutionally vague simply because the Legislature could have "chosen 'clear and more precise language' ...." *Id.* (citation omitted). The Courts have also looked to the

legislative history and the purpose in enacting a statute in attempting to discern the constitutionality of the statute. ***See United States Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers***, 413 U.S. 548, 570–575, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); ***Cotto***, 753 A.2d at 221. Consistent with our prior decisions, as well as United States Supreme Court case law, we will first consider the statutory language employed by the General Assembly in determining whether Section 2506 is unconstitutionally vague.

***Ludwig***, 874 A.2d at 628-29 (footnote omitted).

The statute challenged here, Section 2506, reads as follows:

**(a) Offense defined.**--A person commits a felony of the first degree if the person intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance in violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, and another person dies as a result of using the substance.

**(b) Penalty.--** A person convicted under subsection (a) shall be sentenced to a term of imprisonment which shall be fixed by the court at not more than 40 years.

18 Pa.C.S.A. § 2506 (2011).

The crime described above consists of two principal elements:[5] (i) [i]ntentionally administering, dispensing, delivering, giving, prescribing, selling or distributing any controlled substance or counterfeit controlled substance and (ii) death caused by ("resulting from") the use of that drug. "It is sufficiently definite that ordinary people can understand what conduct is prohibited, and is not so vague that men of common intelligence must

---

[5] ***See also*** the Pennsylvania Suggested Jury Criminal Instructions 15.2506.

- 6 -

necessarily guess at its meaning and differ as to its application." ***Mayfield***, 832 A.2d at 423 (internal quotation marks and citations omitted). As applied to Appellant, Section 2506 could not be any clearer. The record shows that Appellant intentionally dispensed, delivered, gave or distributed heroin to victim, and that victim died as a result of the heroin. ***See*** N.T. Stipulated Record, 1/14/14, at 6-7; ***see also*** Trial Court Opinion, 8/4/14, at 4. Appellant's conduct is precisely what the legislature intended to proscribe when it enacted Section 2506. Accordingly, Section 2506 is not unconstitutionally vague.

We do not need to address Appellant's argument advocating possible interpretations of Section 2506. "[An appellant] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." ***Commonwealth v. Costa***, 861 A.2d 358, 362 (Pa. Super. 2004) (quoting ***Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.***, 455 U.S. 489, 495 (1982)). "In cases that do not implicate First Amendment freedoms, facial vagueness challenges may be rejected where an appellant's conduct is clearly prohibited by the statute in question." ***Id.*** (citing ***Mayfield***, 832 A.2d at 467-68). Because Appellant failed to present any argument or analysis on how the statute was vague as applied to him, he is not entitled to relief. ***See Costa***, 861 A.2d at 365.

To the extent we can construe Appellant's argument as an as-applied challenge, we would nonetheless find the statute is not unconstitutionally vague.

Appellant argues the statute is vague as to the *mens rea* for the offense. We disagree. The statute is as clear and direct as a statute can be. The mental state required is "intentionally" doing one of the acts described therein, namely, administering, dispensing, delivering, giving, prescribing, selling or distributing any controlled substance or counterfeit controlled substances. Additionally, the Crimes Code defines "intentionally" as follows:

> (1) A person acts intentionally with respect to a material element of an offense when:
>
> (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and
>
> (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

18 Pa.C.S.A. § 302(b)(1).

Thus, under the statute, the first element of the crime is met if one "intentionally" administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substances. The first challenge is, therefore, meritless because the statute clearly defines the required *mens rea* for establishing guilt under Section 2506.

Appellant next argues the statute is unconstitutional because it is vague as to the level of causation necessary for guilt. We disagree. The

- 8 -

statute uses the phrases "results from," a concept which is defined also in the Crimes Code.[6]  Section 303 of the Crimes Code, in relevant part, provides:

**Causal relationship between conduct and result**

**(a) General rule.--**Conduct is the cause of a result when:

(1) it is an antecedent but for which the result in question would not have occurred; and

(2) the relationship between the conduct and result satisfies any additional causal requirements imposed by this title or by the law defining the offense.

18 Pa.C.S.A. § 303(a).[7]  The statute, therefore, is clear as to the level of causation.  It requires a "but-for" test of causation.  Additionally, criminal causation requires "the results of the defendant's actions cannot be so extraordinarily remote or attenuated that it would be unfair to hold the defendant criminally responsible."  *Commonwealth v. Nunn*, 947 A.2d 756, 760 (Pa. Super. 2008) (citing *Commonwealth v. Rementer*, 598 A.2d 1300, 1305 (Pa. Super. 1991), *appeal denied*, 617 A.2d 1273 (Pa.

---

[6] "Where there is no textual or contextual indication to the contrary, courts regularly read phrases like 'results from' to require but-for causality." *Burrage v. United States*, 134 S. Ct. 881, 888 (2014).  18 Pa.C.S.A. § 303(a)(1) "establishes the 'but-for' test of causation.  Under existing law causation is established if the actor commits an act or sets off a chain of events from which in the common experience of mankind the result is natural or reasonably foreseeable."  18 Pa.C.S.A. § 303, Comment.

[7] Subsection 303(a)(2) is not applicable here because there is no additional causal requirement imposed by Title 18 or Section 2506.

1992)); *see also* 18 Pa.C.S.A. § 303(b)-(c); *Commonwealth v. Devine*, 26 A.3d 1139 (Pa. Super. 2011). Thus, Section 2506 is not unconstitutionally vague as to the causal relationship under Section 2506 necessary to impose criminal liability.[8]

Appellant also argues that Section 2506 could be read to subject the second element of the crime ("results from") to the same *mens rea* required for the first element (conduct), *i.e.*, "intentionally."[9] As noted by the learned

---

[8] In this context, Appellant argues that the "Commonwealth failed to present any evidence that heroin was the sole or even the primary cause of [victim's] death." Appellant's Brief at 13. Appellant fails to recognize that he stipulated that heroin caused the victim's death. *See* Stipulated Record, 1/14/14, at 8. We also note that:

> Defendant's conduct need not be the only cause of the victim's death in order to establish a causal connection. Criminal responsibility may be properly assessed against an individual whose conduct was a direct and substantial factor in producing the death even though other factors combined with that conduct to achieve the result.

*Nunn*, 947 A.2d 760 (citations and quotations marks omitted). Here, as noted, Appellant stipulated that he "fronted" a bundle of heroin and that the victim died of a heroin overdose. Appellant's criminal liability for the victim's death cannot be any clearer.

[9] *See* Section 302(d):

> **Prescribed culpability requirement applies to all material elements.--**When the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears.

*(Footnote Continued Next Page)*

trial court, such a reading would make Section 2506 superfluous, for intentionally causing the death of another person is already criminalized (*i.e.*, first degree murder). **See** Trial Court Opinion, 8/7/14, at 4 n.2.

Appellant finally argues Section 2506 can also be read not to require any *mens rea* as to the second element of the crime. It would be, in essence, a case of absolute liability. The trial court disagreed with this potential reading of the provision, noting that strict liability criminal statutes are generally disfavored.[10] The trial court found that the mere absence of an explicit *mens rea* requirement should not be read as an indication that the legislature intended to create a strict liability statute. According to the trial court, Section 302(c) provides the culpability requirement for the second element of the crime, *i.e.*, death must be intentional, knowing, or reckless.

*(Footnote Continued)* ────────────

18 Pa.C.S.A. 302(d).

[10] **See Costa**, **supra**:

> Absolute criminal liability statutes are an exception to the centuries old philosophy of criminal law that imposed criminal responsibility only for an act coupled with moral culpability. A criminal statute that imposes absolute liability typically involves regulation of traffic or liquor laws. Such so-called statutory crimes are in reality an attempt to utilize the machinery of criminal administration as an enforcing arm for social regulation of a purely civil nature, with the punishment totally unrelated to questions of moral wrongdoing or guilt.

**Costa**, 861 A.2d at 363-64 (citation omitted).

18 Pa.C.S.A. § 302(c).[11] In support, the trial court notes two statutes, as currently interpreted, provide support for its conclusion, namely 75 Pa.C.S.A. § 3735 (relating to homicide by vehicle while driving under the influence) and 18 Pa.C.S.A. § 2502(b) (relating to murder of the second degree). These statutes, according to the trial court, while they do not require any specific *mens rea* as to the result, are not interpreted as imposing absolute criminal liability.

While Section 302 of the Crimes Code provides default culpability standards to be applied where such standards are not provided, this provision is not applicable to summary offenses and offenses wherein the legislature's intent to impose absolute liability "plainly appears." 18 Pa.C.S.A. § 305(a)(2).[12] The issue here is whether it plainly appears the

_____

[11] Section 302(c) reads as follows: "When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto." 18 Pa.C.S.A. § 302(c).

[12] Section 305(a) reads as follows:

> **(a) When culpability requirements are inapplicable to summary offenses and to offenses defined by other statutes.--**The requirements of culpability prescribed by section 301 of this title (relating to requirement of voluntary act) and section 302 of this title (relating to general requirements of culpability) do not apply to:
>
> > (1) summary offenses, unless the requirement involved is included in the definition of the offense or the court

*(Footnote Continued Next Page)*

legislature intended not to subject the second element of Section 2506 ("results from") to any *mens rea*.

No intent to impose absolute liability plainly appears in Section 2506. "The omission of an explicit *mens rea* element in a criminal statute is not alone sufficient evidence of the legislature's plain intent to dispense with a traditional *mens rea* requirement and impose absolute criminal liability." **Commonwealth v. Parmar**, 710 A.2d 1083, 1089 (Pa. 1998) (OISA) (citation omitted); **see also Commonwealth v. Gallagher**, 924 A.2d 636, 638-39 (Pa. 2007). In the absence of plain legislative intent, "we must consider the purpose for the . . . statute[], the severity of punishment and its effect on the defendant's reputation and, finally, the common law origin of the crimes to determine whether the legislature intended to impose absolute criminal liability." **Parmar**, 710 A.2d at 1089.[13]

_____

*(Footnote Continued)* _____

determines that its application is consistent with effective enforcement of the law defining the offense; or

(2) offenses defined by statutes other than this title, in so far as a legislative purpose to impose absolute liability for such offenses or with respect to any material element thereof plainly appears.

18 Pa.C.S.A. § 305(a).

[13] **See also Commonwealth v. Gallagher**, 874 A.2d 49, 52 n.3 (Pa. Super. 2005), *aff'd*, 924 A.2d 636 (Pa. 2007); **Costa**, 861 A.2d at 363-64 (Pa. Super. 2004).

Section 2506 does not regulate conduct "that is the subject of the typical public welfare offense for which the legislature imposes absolute criminal liability" (*i.e.*, traffic and liquor laws). *Id.* The purpose of the statute is to criminalize conduct not otherwise covered by the Crimes Code, *i.e.*, death resulting from using illegally transferred drugs. *See* Legislative Journal—House (2011) pages 757-58. The penalty imposed for its violation, *i.e.*, a sentence of imprisonment of up to 40 years, is clearly serious. Finally, the common law origin of the crime involved (homicide), traditionally has a *mens rea* requirement. These considerations strongly indicate that the legislature did not intend to impose absolute liability as to the second element of Section 2506. Accordingly, we conclude Section 302(c) provides the *mens rea* requirement for the second element of Section 2506, *i.e.*, death must be at least "reckless." 18 Pa.C.S.A. § 302(c).

The Crimes Code defines "recklessly" as follows:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3).

Additionally, when recklessly causing a particular result is an element of an offense,

the element is not established if the actual result is not within the risk of which the actor is aware or, in the case of negligence, of which he should be aware unless:

(1) the actual result differs from the probable result only in the respect that a different person or different property is injured or affected or that the probable injury or harm would have been more serious or more extensive than that caused; or

(2) the actual result involves the same kind of injury or harm as the probable result and is not too remote or accidental in its occurrence to have a bearing on the liability of the actor or on the gravity of his offense.

18 Pa.C.S.A. § 303(c).

Here, Appellant "fronted" victim a bundle of heroin. Eight packets were found next to the victim, two used and six unused. Victim died of a heroin overdose. Appellant's conduct, therefore, satisfied both parts of the causation test. **See** Pa.C.S.A. § 303; **Devine**, **supra**; **Nunn**, **supra**. But for Appellant selling victim a bundle of heroin, victim would not have died of a heroin overdose. Victim's death was a natural or foreseeable consequence of Appellant's conduct.

> [I]t is certain that frequently harm will occur to the buyer if one sells heroin. Not only is it criminalized because of the great risk of harm, but in this day and age, everyone realizes the dangers of heroin use. It cannot be said that [unauthorized heroin provider] should have been surprised when [victim] suffered an overdose and died. While not every sale of heroin results in an overdose and death, many do.

**Minn. Fire and Cas. Co. v. Greenfield**, 805 A.2d 622, 624 (Pa. Super. 2002), *aff'd,* 855 A.2d 854 (Pa. 2004).

On appeal, then-Justice Castille noted:

- 15 -

Although the overwhelming majority of heroin users do not die from a single injection of the narcotic, it nevertheless is an inherently dangerous drug and the risk of such a lethal result certainly is foreseeable. *See Commonwealth v. Bowden*, 456 Pa. 278, 309 A.2d 714, 718 (1973) (plurality opinion) ("although we recognize heroin is truly a dangerous drug, we also recognize that the injection of heroin into the body does not generally cause death"). The intravenous self-administration of illegally-purchased heroin . . . is a modern form of Russian roulette. Indeed, that is one of the reasons the drug is outlawed and why its use, no less than its distribution, is so heavily punished. [FN]

---

[FN]. The General Assembly has classified heroin as a Schedule I controlled substance, which is the most serious of designations, and carries the heaviest of punishments. *See* 35 P.S. § 780–104(1)(ii)(10). A drug falls within this schedule because of its "high potential for abuse, no currently accepted medical use in the United States, and a lack of accepted safety for use under medical supervision." *Id.* § 780–104(1).

*Minn. Fire and Cas. Co. v. Greenfield*, 855 A.2d 854, 870-71 (Pa. 2004)

(Castille, J., concurring).[14] Accordingly, we conclude that reckless conduct, such as that in this case, may result in criminal liability under Section 2506.

Finally, Appellant argues that the Commonwealth did not establish a *prima facie* case at the preliminary hearing, and that the trial court erred in finding otherwise. The claim fails. It is well-known that any defect in the preliminary hearing is cured by subsequent trial. "Once a defendant has gone to trial and has been found guilty of the crime or crimes charged,

---

[14] *See also Commonwealth v. Catalina*, 556 N.E.2d 973, 980 (Mass. 1990) ("[O]ne can reasonably conclude that the consumption of heroin in unknown strength is dangerous to human life, and the administering of such a drug is inherently dangerous and does carry a high possibility that death will occur.")

- 16 -

however, any defect in the preliminary hearing is rendered immaterial."

***Commonwealth v. Melvin***, 103 A.3d 1, 35 (Pa. Super. 2014) (citation omitted).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/28/2015