J-A19001-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                                    :                  PENNSYLVANIA
                                                    :
                          v.                        :
                                                    :
                                                    :
                                                    :
KARA NICOLE HARTMOYER                :
                                                    :
                   Appellant                 :        No. 628 MDA 2021

Appeal from the Judgment of Sentence Entered April 21, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0000181-2018

BEFORE:   BOWES, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                      **FILED: NOVEMBER 29, 2022**

Kara Nicole Hartmoyer appeals her April 21, 2021 judgment of sentence of fifteen to thirty years of imprisonment, which was imposed after a jury found her guilty of third-degree murder.  We affirm.

The facts of this matter are undisputed and we glean them from the certified record.  Appellant's conviction in this matter stems from the death of Zachary Myers ("the victim"), which occurred in the parking lot of the Super 8 Hotel located at 4131 Executive Park Drive in Swatara Township, Pennsylvania, sometime in the morning hours of October 1, 2017.  At approximately 8:15 a.m. that morning, emergency services were summoned to the hotel by a 911 call placed by Appellant.  Arriving officers discovered the deceased body of the victim, laying prone in the back seat of his Jeep

_____

[*] Former Justice specially assigned to the Superior Court.

Cherokee. Ultimately, it was determined the victim had died due to acute intoxication from, *inter alia*, fentanyl.[1] ***See*** N.T. Trial, 3/9/21, at 170-71.

Appellant was friends with the victim. She and her boyfriend, Andrew Shirk, were staying in a room at the hotel.[2] Appellant claimed the victim had arrived at the room at 10:00 p.m. on September 31, 2017, in an extremely intoxicated state and voluntarily elected to sleep in his Jeep. She also asserted that the victim was awake and capable of speaking at approximately 7:00 a.m. on the morning of October 1, 2017. However, the condition of the victim's body indicated he had been dead for several hours when Appellant claimed to have interacted with him. ***See*** N.T. Trial, 3/8/21, at 63-64.

Upon speaking with Appellant, reviewing text messages on the victim's cell phone, and recovering documentation and discarded trash related to the sale of narcotics, it quickly came to light that Appellant, Shirk, and the victim were "experienced heroin users" who were engaged in the sale and consumption of drugs. Trial Court Opinion, 6/30/21, at 2. Prior to the day in question, the victim had reached out to Appellant to obtain drugs and she

> set up an arrangement between the victim and Shirk. If the victim drove Shirk and Appellant to Philadelphia, Shirk would give the victim drugs. On the weekend of September 29, 2017, to October 1, 2017, [all three parties] made a least one trip to Philadelphia

---

[1] Fentanyl is a "synthetic opioid that is similar to morphine but is [fifty] to [one hundred] times more potent." ***Interest of A.S.***, 255 A.3d 1282 (Pa.Super. 2021) (unpublished memorandum at 1 n.3).

[2] Shirk fled the scene of the victim's death prior to the arrival of police. He was captured later by officers at a different location. He did not testify at Appellant's trial in the above-captioned case.

in order to purchase drugs. Upon returning from Philadelphia, Appellant, Shirk, and the victim proceeded to party in the hotel room and consumed various types of illegal narcotics.

*Id*. These details were corroborated in Appellant's interrogation with police later on October 1, 2017. *See* N.T. Trial, 3/8/21, at 241.

The victim seems to have spent much of Saturday, September 30, in a state of unconsciousness brought on by overindulgence. At some point that night, the victim's condition worsened. Police obtained a video that Appellant had filmed and shared over the social messaging platform Snapchat at approximately midnight on October 1, 2017, wherein she reported the victim was "throwing up" and "overdosing" in her hotel room. *See* N.T. Trial, 3/9/21, at 133-34. At that point, the victim was unable to speak or remain awake. *See* N.T. Trial, 3/10/21, at 312-14.

Police also examined security video footage maintained by the hotel, which depicted Appellant and Shirk dragging the victim out of the hotel room at approximately 4:00 a.m. that same evening. *See* N.T. Trial, 8/8/21, at 91-95. These videos revealed the victim was still alive at that hour but was suffering from "agonal," or agonized, breathing associated with opioid overdoses. *Id*. at 92-93. Using bed linens from the hotel room, Appellant and Shirk dragged the victim down an exterior staircase and across the parking lot. *Id*. at 94-95. Ultimately, they solicited the assistance of another patron to lift the victim into the back seat of his vehicle. *See* N.T. Trial,

8/9/21, at 263. For the next ninety minutes, both the victim and Shirk are seen on video intermittently loitering in the parking lot.

Then, from approximately 5:38 a.m. through 6:01 a.m., Appellant used the victim's car to drive herself and Shirk to a nearby Sheetz and purchase sundries with the victim still in the back seat. *Id*. at 252-54. Later that morning, Appellant and Shirk returned to the vehicle at 7:33 a.m. *Id*. at 254. At that time, Appellant called her grandfather who arrived at the hotel in an SUV several minutes later. Afterwards, Appellant and Shirk spent the next forty-five minutes cleaning out the hotel room and transferring luggage from the victim's car to Appellant's grandfather's vehicle. *Id*. at 254-57. Only once these tasks were complete did Appellant call 911 on the victim's behalf.

Appellant was interviewed that same day by members of the Swatara Township Police Department and confronted with security footage from the hotel. *Id*. at 241-42. During this interrogation, Appellant represented, *inter alia*, that she had personally overdosed on at least seven occasions.[3] *Id*. at 246; *see also* N.T. Trial, 3/10/21, at 299. Appellant was charged with third-degree murder, drug delivery resulting in death, and conspiracy to commit drug delivery resulting in death. The counts regarding drug delivery were eventually withdrawn. A jury trial was held from March 8 to March 10, 2021.

---

[3] During several of these incidents, Appellant's life was saved by the use of Narcan, which is a medication "designed to rapidly reverse opioid overdose." *Interest of A.S.*, *supra* at 1 n.2; *see also* N.T. Trial, 3/9/21, at 269-70.

- 4 -

At the close of the Commonwealth's evidence, Appellant requested a directed verdict on the grounds that the Commonwealth had failed to establish the element of causation. *See* N.T. Trial, 3/9/21, at 273-74. It was denied.

During Appellant's testimony in her defense, she confirmed the factual details set forth above. *See* N.T. Trial, 3/9/21, at 277-338; N.T. Trial, 3/10/21, at 339-47. However, she also claimed she was unable to remember large swathes of time from the night and morning of the victim's death. In the end, the jury found Appellant guilty of third-degree murder. On April 21, 2021, the trial court sentenced her to fifteen to thirty years of imprisonment. Appellant did not file any post-sentence motions.[4] On May 19, 2021, Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with the requirements of Pa.R.A.P. 1925.

Appellant has raised the following issues for our consideration:

1. Should the trial court have granted Appellant's request for a directed verdict when the Commonwealth failed to establish the necessary elements of third[-]degree homicide and, by extension, involuntary manslaughter?

2. Was the evidence at trial insufficient to sustain the jury verdict of guilt for third[-]degree homicide?

3. Was the jury's verdict so against the weight of evidence so as to shock one's sense of justice?

---

[4] Appellant's counsel received an extension of time in which to file post-sentence motions. *See* Order, 5/5/21 (setting a deadline of May 10, 2021). On the day the post-sentence motions were due, Appellant's counsel filed a second motion requesting an extension. It was denied. Thereafter, no post-sentence motions were filed with the trial court on Appellant's behalf.

Appellant's brief at 9.

Initially, we note that Appellant has framed her first two claims as distinct questions. However, a request for a directed verdict, or a request for judgment of acquittal, necessarily challenges the sufficiency of the Commonwealth's evidence. **See** Pa.R.Crim.P. 606(A)(1) ("A defendant may challenge the sufficiency of the evidence to sustain a conviction of one or more of the offenses charged in . . . a motion for judgment of acquittal at the close of the Commonwealth's case-in-chief[.]"); **see also Commonwealth v. Emanuel**, 86 A.3d 892, 894 (Pa.Super. 2014) ("A motion for a judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge."). Accordingly, we address Appellant's first two claims collectively.

Since "evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Diamond**, 83 A.3d 119, 126 (Pa. 2013). In reviewing a matter implicating the sufficiency of the evidence, we must remain mindful of the following:

> [W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to

be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Lynch*, 242 A.3d 339, 352 (Pa. Super. 2020) (cleaned up).

Appellant was convicted of third-degree murder, which occurs "when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." *Commonwealth v. Morris*, 958 A.2d 569, 576 (Pa.Super. 2008); *see also* 18 Pa.C.S. § 2502(c). For these purposes, "[m]alice is not merely ill-will but, rather, wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty." *Id*.

With regards to sufficiency, Appellant's primary argument is that her conviction violates 18 Pa.C.S. § 301, which provides as follows:

**§301. Requirement of voluntary act.**

**(a) General rule.—**A person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act or the omission to perform an act of which he is physically capable.

**(b) Omission as basis of liability.—**Liability for the commission of an offense may not be based on an omission unaccompanied by action unless:

(1) the omission is expressly made sufficient by the law defining the offense; or

(2) a duty to perform the omitted act is otherwise imposed by law.

18 Pa.C.S. § 301(a)-(b). In this statute, "the legislature intended to distinguish between a legal duty to act and merely a moral duty to act." ***Commonwealth v. Pestinikas***, 617 A.2d 1339, 1345 (Pa.Super. 1992) (*en banc*). Thus, "[a]n omission to act can satisfy the physical aspect of criminal conduct only if there is a duty to act imposed by law." ***Id***. This Court has applied § 301 in the specific context of sufficiency. ***Id***.

In her brief, Appellant asserts that "the Commonwealth failed to establish that [Appellant] had a fundamental duty to save the [victim's] life." Appellant's brief at 16. However, her argument is predicated upon the assumption that Appellant took no affirmative acts that contributed to the victim's death. Reviewing the evidence detailed above in the light most favorable to the Commonwealth, we readily conclude that Appellant's culpable conduct included at least two "voluntary acts" that contributed to the victim's death. ***See*** 18 Pa.C.S. § 301(a). Specifically, she was an active participant in: (1) helping to set-up the arrangement that led to the victim providing transportation in exchange for narcotics; and (2) removing the victim from the hotel room and sequestering him in the backseat of a car while he was overdosing. Thus, Appellant's arguments under § 301 are unavailing. ***See Pestinikas***, ***supra*** at 1345 (finding no violation of § 301 where the defendant's actions were "not limited merely to an omission to act").

Additionally, Appellant asserts that the Commonwealth failed to establish causation. ***See*** Appellant's brief at 15 ("There is also the issue of

causation, in that [Appellant's] action did not contribute to the [victim's] death, or, had such a low contribution that it did not outweigh the direct and substantial act of injecting himself with heroin/fentanyl.").  We disagree.

As a general matter, "it is undisputed that causation constitutes an essential element of the offense of murder which the Commonwealth must prove beyond a reasonable doubt."  **Commonwealth v. Rementer**, 598 A.2d 1300, 1304 (Pa.Super. 1991).  The Pennsylvania Rules of Criminal Procedure have defined the requirement of causation as follows:

> **(a) General rule.**--Conduct is the cause of a result when:
>
> (1) it is an antecedent but for which the result in question would not have occurred; and
>
> (2) the relationship between the conduct and result satisfies any additional causal requirements imposed by this title or by the law defining the offense.

Pa.R.Crim.P. 303(a).  Our Court has interpreted this statute as establishing a two-part test with respect to causation, as follows:

> First, the defendant's conduct must be an antecedent, but for which the result in question would not have occurred.  A victim's death cannot be entirely attributable to other factors; rather, there must exist a causal connection between the conduct and the result of conduct; and causal connection requires something more than mere coincidence as to time and place.  Second, the results of the defendant's actions cannot be so extraordinarily remote or attenuated that it would be unfair to hold the defendant criminally responsible.

**Commonwealth v. Spotti**, 94 A.3d 367, 375 (Pa.Super. 2014) (cleaned up).

With particular reference to the case at bar, we note that "[t]he second part

of the test is satisfied when the victim's death is the natural or foreseeable consequence of the defendant's actions." *Id*. at 375-76.

Here, the evidence of record establishes that the victim reached out to Appellant to obtain narcotics from Shirk. She facilitated the resulting arrangement, whereby the victim provided transportation to and from Philadelphia in exchange for heroin from Shirk. After this task was completed, all three parties consumed drugs in Appellant's hotel room over the course of approximately 48 hours. Based on the foregoing, we readily conclude that Appellant's actions were an antecedent to the victim's death under § 303(a)(1). But for Appellant's facilitation of the agreement between the victim and Shirk, the victim would never have overdosed in Appellant's hotel room. She helped provide both the means and the forum for these tragic events.

During this time, the victim's physical condition began to rapidly deteriorate from acute opioid intoxication. Indeed, despite her faltering memory, Appellant was able to offer vivid descriptions of the victim's state in the hotel room. *See* N.T. Trial, 3/9/21, at 287 ("[The victim] was just all over the place. I was trying to get him up. He wouldn't get up. He was just mumbling. . . . He was just mumbling and rolling around. He actually stood up at one point and then fell over. He was puking."). On this point, it is important to bear in mind that Appellant was, herself, an experienced heroin user who had overdosed at least seven times before. Consequently, she was

well aware of both the dangers posed by opioid use and the physical signs that someone was in trouble.

Rather than summoning emergency aid by dialing 911, or utilizing the victim's vehicle to take him to an emergency medical provider, Appellant took instead to social media to document the victim's suffering in a Snapchat video. Several hours later, the victim had not improved but was experiencing agonal breathing, *i.e.*, literally gasping for air. Appellant responded by helping drag the victim from the hotel room and stuffing him into the back of his car. Then, Appellant effectively abandoned the victim to his fate. Thus, while not the sole basis for her conviction, Appellant's omissions are significant. She failed to take any action when confronted with indicia that the victim's life was in danger from acute opioid intoxication. In fact, Appellant actively helped sequester the dying victim in his car, thereby ensuring that he was unable to seek or receive help from any other person. In the absence of Appellant's actions and disregard for the victim's life, he would not have perished on the morning of October 1, 2017. These consequences were fully foreseeable. ***See Commonwealth v. Kakhankham***, 132 A.3d 986, 996 (Pa.Super. 2015) ("The intravenous self-administration of illegally-purchased heroin . . . is a modern form of Russian roulette." (cleaned up)).

Based on the foregoing, we conclude that the Commonwealth adduced sufficient evidence to satisfy the requisite element of causation. No relief is due with respect to Appellant's second sufficiency argument.

In addition to her sufficiency arguments, Appellant has also challenged the weight of the Commonwealth's evidence. *See* Appellant's brief at 17-19. However, a challenge to the weight of the evidence must be preserved in either a post-sentence motion, or in an oral or written motion before sentencing. *See* Pa.R.Crim.P. 607(a)(1)-(3). Instantly, Appellant failed to preserve this argument in any relevant filing or averment in the trial court. Thus, this claim is waived. *See Commonwealth v. Cox*, 231 A.3d 1011, 1018 (Pa.Super. 2020) ("An appellant's failure to avail himself of any of the prescribed methods for presenting a weight of the evidence issue to the trial court constitutes waiver of that claim.").

For the reasons set forth above, Appellant has presented no basis for us to disturb her judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/29/2022