J-S40034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER FERRANTE | : | |
| | : | |
| Appellee | : | No. 1445 EDA 2022 |

Appeal from the Order Entered May 24, 2022
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0000858-2021

BEFORE: BENDER, P.J.E., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED APRIL 21, 2023**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Northampton County Court of Common Pleas, which denied the Commonwealth's request for a continuance of trial.[1] We affirm.

The relevant facts and procedural history of this case are as follows. On December 25, 2020, police discovered the body of an unresponsive male inside his vehicle. The coroner's officer discovered three bags of Fentanyl on the body. An autopsy revealed that the cause of death was "acute intoxication

---

[1] In its notice of appeal, the Commonwealth stated that "it takes this interlocutory appeal pursuant to Pennsylvania Rule of Appellate Procedure 311(d), and herein certifies that the trial court's May 24, 2022 order substantially handicaps the prosecution." (Notice of Appeal, 5/25/22). Thus, we agree with the Commonwealth that this matter is properly before us. ***See*** Pa.R.A.P. 311; ***Commonwealth v. Norton***, 144 A.3d 139, 141 n.1 (Pa.Super. 2016) (explaining that Commonwealth may properly appeal order denying its motion for continuance where it includes Rule 311 certification).

due to the combined effects of Fentanyl, Methadone, Atarax, Rompun, and Benadryl." (Trial Court Opinion, 7/27/22, at 3). On February 8, 2021, Appellee, Christopher Ferrante, was arrested and charged with one count of drug delivery resulting in death, and two counts each of possession of a controlled substance with intent to deliver, criminal use of a communication facility, and possession of a controlled substance.[2] The court held Appellee's preliminary hearing on March 26, 2021, and he was formally arraigned on July 8, 2021.

After numerous pretrial hearings, the court scheduled the case for a jury trial commencing on April 4, 2022. On March 23, 2022, the court held a pre-trial conference wherein counsel for each party stated they were ready for trial. On March 28, 2022, the district attorney sent a letter to the court indicating that he had some evidentiary issues concerning the toxicology report and requesting a continuance of the trial date.

On March 30, 2022, the court discussed the Commonwealth's request during a hearing on a pending motion *in limine* filed by Appellee. The district attorney explained that the Commonwealth became aware the week prior that the toxicologist would be able to testify as to what was found in the victim's bloodstream but could not testify as to whether the fentanyl found in the blood stream was a lethal dose. (N.T. Hearing, 3/30/22, at 19-20). Therefore, the

---

[2] 18 Pa.C.S.A. § 2506(a); 35 P.S. § 780-113(a)(30); 18 Pa.C.S.A. § 7512(a); and 35 P.S. § 780-113(a)(16), respectively.

Commonwealth sought a continuance to engage another toxicologist to interpret some of the data from the toxicology report. (**Id.** at 21). The court granted the Commonwealth's request, continuing trial to the May 31, 2022, criminal trial term. The court made clear that it did not intend to grant any more continuances in this case. (**Id.** at 23).

On May 19, 2022, the Commonwealth sent another letter to the court requesting another continuance of trial. The next day, Appellee filed a petition to modify bail in the event the court granted the continuance. On May 24, 2022, the court convened a hearing on the motion for continuance and motion to modify bail. At the hearing, the following exchange took place:

> THE COURT: All right. So, this is a request for a continuance. Please articulate the basis of this continuance in more detail.
>
> [ASSISTANT DISTRICT ATTORNEY ("ADA") PEPPER]: If I may, Judge, this is a rather complicated case. As of late last week, I took over responsibility as first chair or lead counsel in this case with ADA Turzyn who will be second chair. There have been certain adjustments made in the DA's Office such that [ADA] Thompson cannot continue with this case.
>
> In addition to that, there are certain tests that now that [ADA] Turzyn has looked at the case we believe need to be completed by, first, the State Police, and then we need to hire a professional expert toxicologist as far as this case is concerned. As the [c]ourt has noted, this case is currently scheduled for trial on Monday, and clearly—
>
> THE COURT: It's actually Tuesday, May 31st.
>
> [ADA PEPPER]: I'm sorry.
>
> THE COURT: We have a holiday. It's scheduled for jury

- 3 -

selection on Tuesday, May 31st.

[ADA PEPPER]: That is correct, Judge. I'm sorry. And I don't believe that I can become familiar with the case or be prepared for the case—

THE COURT: Well, you've created your own hardship. You have [ADA] Thompson, who has had this case since day one. This defendant was charged back in, what, February 8th of 2021, and he's handled this case, at least as far as I know, through the time period up until today, has appeared before the [c]ourt numerous times for conferences, handled the pretrial motion that was filed. And here we are, you know, a week from trial and the Commonwealth decides to shuffle the deck of who's handling this case and then come in and say, oh, we have a hardship because we decided internally that [ADA] Thompson is going to be doing something else, perhaps, I don't know. So I'm taking over the case and another [ADA], we don't have time to be prepared. So you created your own hardship. I don't understand, you know, why that's done. It's not my business, quite frankly. It's up to the DA to decide which cases are assigned to the [ADA']s. But you're using that as part of a reason why you need a continuance, and that's a self-created hardship. Isn't it?

[ADA PEPPER]: I'm not saying it's a hardship, Judge. I'm saying the case is not ready for trial.

THE COURT: Well why isn't it ready? Tell me why it's not ready. I mean, this has been going on since the time this gentleman was arrested on February 8, 2021. The case was scheduled for trial April 4th. At that time the Commonwealth stated that they needed a continuance, I think it was for two reasons. One was the issue with the toxicologist who signed a report who wasn't a toxicologist, and there was also a witness, as I recall, that was not available. So, the [c]ourt continued the case to this date of May 31st. Now you're telling me that the case isn't ready for trial. Why isn't it ready? I don't understand.

[ADA PEPPER]: The conversations with the toxicologist and [ADA] Turzyn, we've come to the conclusion that we need an additional expert toxicologist.

THE COURT: But why[?] How do you come to this conclusion a week from trial? That's what I want to know. Why isn't this case—has this case not been given attention?

[ADA PEPPER]: It has.

THE COURT: Well, then why didn't we know this sooner? What is the issue? Tell me what the issue is.

[ADA PEPPER]: The issue is we need [an] additional professional witness.

THE COURT: Why?

[ADA PEPPER]: Because we believe that's how the case should be tried.

THE COURT: Well, why wasn't that done months ago?

[ADA PEPPER]: I can't answer that.

THE COURT: So you're saying that you need a new expert?

[ADA PEPPER]: We need an expert in toxicology.

THE COURT: And you don't have that now?

[ADA PEPPER]: We do not.

THE COURT: Well, why don't you have that now? That's what I'd like to know.

[ADA PEPPER]: I can't answer that other than speculating that the toxicologist who performs the test and spoke to us, we don't believe can qualify as an expert in the area we specifically need her to do so. She will be a witness. But we believe we need an additional—

THE COURT: And when—and how did you learn this?

[ADA PEPPER]: [ADA] Turzyn spoke with her directly last— last week?

[ADA TURZYN]: Your Honor, if I may, the original person who ran the toxicology report we were under the assumption was a toxicologist. It was not a toxicologist.

THE COURT: All right, well, we knew that a while ago. [ADA] Thompson told us that.

[ADA TURZYN]: Correct.

THE COURT: When he learned about that, it's over a month ago.

[ADA TURZYN]: Right.

THE COURT: And I believe [ADA] Thompson became aware of that. He informed the [c]ourt of that.

[ADA TURZYN]: Yes.

THE COURT: And the [c]ourt said, Okay, we're going to give you time to get someone else. I think the last time we met we were assured that that person was in place and was ready to issue a report. So what happened with the second person?

[ADA TURZYN]: With that second person in the meeting we discerned that she needed much more information to render an expert opinion—

THE COURT: What information? What information?

[ADA TURZYN]: She would need the autopsy report.

THE COURT: Well, the autopsy report has been available for how long?

[ADA TURZYN]: No, I understand, Your Honor, we just weren't aware that she needed that at that time.

THE COURT: Okay, so you send it to her, and then she's ready.

[ADA TURZYN]: Like I said, she needs her autopsy report. She needs the medical records from the defense and the

- 6 -

history—

THE COURT: Which we also had available for a long time?

[ADA TURZYN]: Correct. But we weren't aware she needed them. We did not provide them to her at that time.

THE COURT: Well, what I don't understand, though, is that—when did you learn this?

[ADA TURZYN]: We learned this in the initial consultation which was about two weeks ago.

THE COURT: Okay. So she says, I need the autopsy report; I need the medical reports. You have those, you zoom them out on email. How much time does she need to review this stuff?

[ADA TURZYN]: Your Honor, she said that it would take her quite some time to render an expert report, so we haven't gotten a firm deadline from her and she's not an expert in drugs resulting in death so she would like to refer it out to a different expert in the NMS Lab.

THE COURT: Is this the State Police?

[ADA TURZYN]: No, Your Honor. This is NMS Labs.

THE COURT: So this person works for the NMS Lab?

[ADA TURZYN]: Correct.

THE COURT: And she's a second person that the Commonwealth was dealing with relative to this case; is that right? There was a State Police person that signed this initially, isn't that right?

[ADA TURZYN]: A State Police person signed the drug test for what was found on [Appellee].

THE COURT: The toxicology report?

[ADA TURZYN]: No. That was always NMS Labs.

THE COURT: It was. Okay. All right, so the first person at the lab was not qualified?

[ADA TURZYN]: Was not a toxicologist, just a certifying scientist.

THE COURT: Okay, now the second woman—is it a woman?

[ADA TURZYN]: Yes.

THE COURT: And she's not qualified either?

[ADA TURZYN]: She was there to consult and she believes that an expert from NMS Labs in drug deliveries resulting in death would be more appropriate.

THE COURT: Well, I really am, you know, perplexed by this whole thing, quite frankly. I mean these cases are not unique to the criminal justice system. We've had, you know, hundreds of them over the years, so I just don't really know what happened here. So you're saying that you're not ready because you have no expert witness to testify? What are they going to testify to? Tell me what they're testifying to.

[ADA TURZYN]: She would be testifying to but for the fentanyl being in his system that the victim would not have died. But because of the circumstances of how much fentanyl is in the system, the expert would need more information to render such opinion.

THE COURT: And that information is what again? The autopsy report, which they have. The medical records they have. What other information do they need?

[ADA TURZYN]: She would need the investigative report, the photos of the crime scene and everything else related to render that opinion.

THE COURT: There was also something raised in this letter, something to deal with an elephant tranquilizer agent. Is that an issue also?

[ADA PEPPER]: One of the drugs that was found is an animal tranquilizer. The toxicologist needs to also address

that.

THE COURT: And was found where?

[ADA TURZYN]: In his blood.

[ADA PEPPER]: In his system.

THE COURT: Well, we knew that, right? That's something that—that just didn't come up recently. That's in the initial toxicology report.

[ADA PEPPER]: It is listed.

THE COURT: Is that a surprise?

[ADA PEPPER]: No.

[ADA THOMPSON]: I'm sorry, Judge. If I may, the issue in particular is when we received the initial Pennsylvania State Police report, the substances that were located on the deceased, that report simply reported the controlled substances which would be the fentanyl that they discovered in the substances. Working on another one of these cases, I received a more recent report from the Pennsylvania State Police lab.

THE COURT: I understand that. Go ahead.

[ADA THOMPSON]: The state police lab reported that not only was the controlled substance found in the blood— excuse me, in the substances, but now it also—because they're becoming more and more familiar with these cases, they're beginning to report the tranquilizer, the Rompun, which is the name of the drug itself, commercial name, in that report. So [ADA] Turzyn had followed up on that with the lab person who indicated that they still had the original notes. They would have to do an additional report, but that report would indicate that this substance also was found in those packages that were located on the deceased. This impacts the case fairly broadly.

THE COURT: How? Tell me how.

[ADA THOMPSON]: So the argument is essentially drug delivery resulting in death.  But if you can argue that it was not just the fentanyl that killed him but its interaction with this xylazine, was the name, that's a potential defense and a potential issue for the Commonwealth to grapple with. However, if in truth, if the actual evidence now is that the delivery was not just—at least the Commonwealth can argue that the delivery was not just the fentanyl but also with the xylazine that was included in the items found on the deceased, I think that changes somewhat the complexion of the case and the arguments for both sides.

\* \* \*

THE COURT:  All right, [defense counsel], do you oppose the request for the continuance, or are you in agreement with it?

[DEFENSE COUNSEL]:  We do not consent.

(N.T. Hearing, 5/24/22, at 4-17).

After hearing the parties' positions on both the request for continuance and Appellee's petition to modify bail if the court granted the continuance, the court denied both motions.  The next day, on May 25, 2022, the Commonwealth filed the instant interlocutory appeal per Rule 311(d).  The trial court did not order the Commonwealth to file a concise statement of errors complained of on appeal under Pa.R.A.P. 1925(b), and the Commonwealth did not file one.

The Commonwealth raises one issue on appeal.

Did the trial court abuse its discretion by denying the Commonwealth's motion for a trial continuance?

(Commonwealth's Brief at 4) (unnecessary capitalization omitted).

The Commonwealth argues that it sought a continuance of trial to obtain

an additional expert witness. The Commonwealth claims that to prove Appellee's guilt concerning the charge of drug delivery resulting in death, its expert was required to opine not only that fentanyl was found in the victim's blood, but also as to the amount of fentanyl and whether that was a fatal dose. (*Id.* at 11-12). The Commonwealth explains that its original toxicologist was unable to render an expert opinion on these points. Therefore, the Commonwealth insists that it was entitled to a continuance to secure a new toxicologist as a material witness for trial. The Commonwealth concludes the court abused its discretion in denying a continuance, and this Court must grant relief. We disagree.

"The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion." *Commonwealth v. Brooks*, 628 Pa. 524, 529, 104 A.3d 466, 469 (2014) (quoting *Commonwealth v. Randolph*, 582 Pa. 576, 583, 873 A.2d 1277, 1281 (2005)).

> This Court has observed that "[t]rial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." *Commonwealth v. Sandusky*, 77 A.3d 663, 671 (Pa.Super. 2013) (quotation omitted). However, the trial court exceeds the bounds of its discretion when it denies a continuance on the basis of "an unreasonable and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay[.]" *Id.* at 672 (quotation marks and quotation omitted). Accordingly, we must examine the reasons presented to the trial court for requesting the continuance, as well as the trial court's

reasons for denying the request.  ***See id.***

***Norton, supra*** at 143.  Additionally:

> When deciding a motion for a continuance to secure a material witness the trial court is guided by the following factors:
>
> > (1) the necessity of the witness to strengthen the [party's] case; (2) the essentiality of the witness to [the party's case]; (3) the diligence exercised to procure [the witness'] presence at trial; (4) the facts to which [the witness] could testify; and (5) the likelihood that [the witness] could be produced at the next term of court.
>
> > ***Commonwealth v. Micelli***, 573 A.2d 606, 607 (Pa.Super. 1990) (quotation and footnote omitted).

***Id.*** at 143–44.

Instantly, the Commonwealth charged Appellee with, *inter alia*, drug delivery resulting in death, which requires proof that an individual intentionally distributed a controlled substance, and another person died as a result of using that substance.  ***See*** 18 Pa.C.S.A. § 2506(a).  Section 2506 requires a "but-for" test of causation, such that "the results of the defendant's actions cannot be so extraordinarily remote or attenuated that it would be unfair to hold the defendant criminally responsible."  ***Commonwealth v. Kakhankham***, 132 A.3d 986, 993 (Pa.Super. 2015), *appeal denied*, 635 Pa. 773, 138 A.3d 4 (2016) (quoting ***Commonwealth v. Nunn***, 947 A.2d 756, 760 (Pa.Super. 2008), *appeal denied*, 599 Pa. 690, 960 A.2d 838 (2008)).

In evaluating the relevant factors, the trial court found no justifiable basis for a continuance.  (***See*** Trial Court Opinion at 19).  The court explained

that it was neither "necessary" nor "essential" for the Commonwealth to have

another expert to prosecute its case. Specifically, the trial court reasoned:

> In this matter, the toxicology report attached to the autopsy report detailed the amount of Fentanyl found in the victim's system as 29 ng/ml. Dr. Hua, the forensic pathologist who performed the autopsy, stated in his report that the victim died from "acute intoxication due to the combined effects of Fentanyl, Methadone, Ataiax, Rompun and Benadryl." Dr. Hua was prepared to testify, unequivocally, that it was the Fentanyl that caused the victim's death. At a hearing on March 30, 2022, the Commonwealth's attorney, [ADA] Thompson, stated as follows:
>
> > [ADA] THOMPSON: Yeah, Dr. Hua. I met with him the other day and that's essentially his testimony, its Fentanyl that killed him.
> >
> > THE COURT: Well, the level as set forth in the toxicology report?
> >
> > [ADA] THOMPSON: Well, that's a very high level. He will testify to that.
> >
> > THE COURT: That's what he'll say?
> >
> > [ADA] THOMPSON: Yes.
> >
> > THE COURT: That's what he'll say?
> >
> > [ADA] THOMPSON: I think—yes. Absolutely.
>
> (N.T., 3/30/2[2], at 15).
>
> In short, the Commonwealth had available a qualified expert witness, Dr. Hua, who was prepared to relate the level of Fentanyl found in the victim as the cause of the victim's death. The anticipated testimony of Dr. Hua would have been sufficient evidence to have the primary charge submitted to the jury. We had previously indicated that we would permit Dr. Hua to discuss the significance of the level of Fentanyl in the victim's system and to opine that it was the cause of the victim's death. (***See id.*** 12-17).

J-S40034-22

We recognize that the Commonwealth has the right to present its case as it deems necessary, including but not limited to, having more than one expert. We continued the April 4, 2022 trial date specifically to grant the Commonwealth the time to retain another toxicologist who we were told would merely be signing the initial report and testifying to its contents. (*See* N.T., 5/4/22, 8-12). The Commonwealth had ample time from March 24, 2022 until May 31, 2022 to bolster its case however they deemed appropriate. However, even without another toxicologist who would relate the amount of Fentanyl to the victim's death, the Commonwealth had sufficient evidence to get all charges to a jury. In light of the anticipated testimony of Dr. Hua, we did not find it necessary or essential for the Commonwealth to secure another expert to relate the amount of Fentanyl to the victim's death.

Secondly, we found that the Commonwealth did not exercise due diligence in procuring such testimony between March 24, 2022, when it identified its need, and the trial date. Due diligence requires at least an attempted effort. Here, despite repeated questions posed by us to the Commonwealth attorneys as to why nothing was done during the two (2) month period between March 24, 2022 and May 24, 2022 to secure their desired witness, we were answered with repeated "I can't answer that." (N.T., 5/24/22, at 7). Further, the Commonwealth could not even assure us that they could be ready for Criminal Court terms scheduled in July, August, or September. They sought a continuance to October 2022.

Lastly, as we noted at the hearing, the Commonwealth created its own additional hardship when it decided on the eve of trial, without explanation, to replace [ADA] Thompson, who had handled all matters related to this case since February 2021. [ADA] Thompson is a Supervising Deputy District Attorney who supervises the Drug Task Force Unit of the Northampton County District Attorney's Office. He has been an Assistant District Attorney for over 20 years. He appears before this [c]ourt regularly and has handled a number of serious cases. Although the Commonwealth had every right to assign new prosecutors to the case, such action did not justify a continuance. The

- 14 -

new prosecutors had one (1) week to prepare themselves and should have known that, if they were going to assume responsibility for the case, they would have to be prepared for the upcoming trial date.

(Trial Court Opinion at 20-23).

Our review of the record makes clear that the court evaluated the factors relevant to whether to grant or deny a continuance, and the court denied the Commonwealth's request based on the lack of necessity of the witness to prove the Commonwealth's case and the Commonwealth's failure to exercise due diligence in preparing for trial. In light of our deferential standard of review, we conclude the trial court did not abuse its discretion under these circumstances. **See Brooks, supra**; **Norton, supra**. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/21/2023